IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC COTHRELL,

                                                    No. 3:15-cv-00775-HZ

                    Plaintiff,

                                                    OPINION & ORDER

        v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

George J. Wall
Law Offices of George J. Wall
1336 E Burnside St., Ste. 130
Portland, OR 97214

        Attorney for Plaintiff

//

//

1 - OPINION & ORDER

Billy J. Williams
United States Attorney, District of Oregon
Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Ste. 600
Portland, OR 97201

Jordan D. Goddard
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 221
Seattle, WA 98104

      Attorneys for Defendant


HERNÁNDEZ, District Judge:

      Plaintiff Eric Cothrell brings this action under the Social Security Act ("Act"), 42 U.S.C.

§§ 405(g) and 1383(c)(3), for judicial review of the Commissioner of Social Security's final

decision denying his application for disability insurance benefits ("DIB") under Title II and

supplemental security income ("SSI") under Title XVI of the Act. Because it is based on legally

sufficient reasons supported by substantial evidence, the Commissioner's decision is affirmed.

## BACKGROUND

      Cothrell applied for DIB and SSI on December 17, 2009, alleging an onset date of

January 1, 2003. Tr. 484, 488.[1] Cothrell later amended his alleged onset date to October 28,

2005. Tr. 22. After a hearing, Administrative Law Judge ("ALJ") Steve Lynch issued a decision

on September 14, 2011, in which he found Cothrell was disabled beginning on December 17,

2009. Tr. 22. Cothrell appealed, but the Appeals Council denied his request for review. Tr. 6.

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as Docket No. 11.

Cothrell then appealed to the district court, and in March of 2014, Judge Ancer Haggerty reversed the Commissioner's decision and remanded the case for additional administrative proceedings. Tr. 615. On remand, ALJ Lynch held a second hearing, and subsequently issued a second decision finding Cothrell was not disabled prior to December 17, 2009. ALJ Lynch's second decision is the Commissioner's final decision that Cothrell now challenges in this Court. See Tr. 595.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her

past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## ALJ DECISION

The ALJ found that Cothrell met the insurance status requirements of the Act through December 31, 2007. Tr. 601. At step one, the ALJ found Cothrell had not engaged in substantial gainful activity since before the amended alleged onset date of October 28, 2005. Tr. 601. At step two, the ALJ found Cothrell had the following severe impairments: "depression, anxiety, posttraumatic stress disorder (PTSD), social phobia, a personality disorder, attention deficit disorder (ADD), substance induced psychosis, and polysubstance abuse." Tr. 601. At step three, the ALJ found that, prior to December 17, 2009, Cothrell's impairments or combination of impairments did not meet or equal the severity of any listed impairments. Tr. 602. However, the ALJ also found that Cothrell's substance abuse was a material factor in the disability analysis. Tr. 603–06. The ALJ found that, prior to December 17, 2009, Cothrell had the following RFC:

> [T]he claimant had the residual functional capacity to perform a full range of work at all exertional levels subject to nonexertional limitations that included being limited to simple entry-level work, with occasional interaction with the public and coworkers, and attention deficit disorder without drug and alcohol

> abuse, but with drug and alcohol abuse, being absent on a random basis at least
> two days a month.

Tr. 603. At step four, the ALJ found that Cothrell had past relevant work. Tr. 606. Next, the ALJ

found that, since his alleged onset date of October 28, 2005, Cothrell was unable to perform any

past relevant work. Tr. 606. At step five, the ALJ found that prior to December 17, 2009,

Cothrell's ability to perform work was limited by "nonexertional limitations which either include

or exclude drug and alcohol abuse." Tr. 609. The ALJ then explained that he asked the

vocational expert whether there were jobs in the national economy that Cothrell could perform, if

the ALJ excluded the effects of drug and alcohol abuse. Tr. 609. The VE concluded that Cothrell

could have performed jobs such as final assembler optical, bench assembler, and janitorial work

in any industry. Tr. 609. Once, however, the VE considered the limitations caused by Cothrell's

drug and alcohol abuse, specifically that he would be randomly absent from work at least twice a

month, the VE concluded that such attendance issues would preclude Cothrell from competitive

employment. Tr. 609–10. The ALJ thus concluded that drug and alcohol abuse was material to

Cothrell's disability. Tr. 610.

Next, the ALJ found that, beginning on December 17, 2009, the severity of Cothrell's

impairments medically equaled the criteria of section 12.04, 12.06, and 12.08 of the SSA

regulations, and thus was disabled. Tr. 610. That date is significant because Cothrell was

psychiatrically hospitalized from  December 11, 2009 to January 1, 2010. Tr. 30–31. The ALJ

relied on testimony from non-examining medical expert Dr. Margaret Moore, and other medical

evidence from Cothrell's late-2009 hospitalization and subsequent treatment to conclude that his

psychiatric impairments had deteriorated and persisted at listing-level severity, and that any drug

or alcohol abuse was no longer material to his disability. Tr. 610–12. Therefore he was disabled

as of December 17, 2009 and entitled to receive benefits as of that date. Tr. 611–13.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

## DISCUSSION

Although ALJ Lynch ruled that Cothrell was disabled as of December 17, 2009, Cothrell seeks review of ALJ Lynch's conclusion that Cothrell is not entitled to receive benefits for the period between his alleged onset date, October 28, 2005, and December 17, 2009, because during that time, drug and alcohol abuse was material to Cothrell's disability. Pl. Brief at 2. Cothrell challenges the ALJ's decision on four grounds: 1) that the ALJ did not comply with Social Security Ruling (SSR) 13-2p when assessing the effects of drug and alcohol abuse on Cothrell's ability to work; 2) that the ALJ improperly rejected the opinion of examining psychologist Dr. Karla Causeya; 3) that the ALJ improperly rejected the lay testimony of Cothrell's mother and sister; and 4) that the ALJ's decision is not supported by substantial evidence. Pl. Brief at 3.

1.  Drug and Alcohol Issues

Cothrell argues that the ALJ erred in analyzing the effects of drug and alcohol abuse on his disability in two separate ways. First, Cothrell asserts that the ALJ erred by failing to "identify any evidence in the record establishing the effects of DAA[2] on [Cothrell's] ability to work during the relevant period." Pl. Brief at 7. Second, Cothrell argues that SSR 13-2p requires the ALJ to order a consultive exam to determine the effects of DAA, but the ALJ failed to do so. Pl. Brief at 7. Neither is a sufficient ground for reversing the Commissioner's decision.

Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." "Congress adopted this amendment in 1996 as part of the Contract with America Advancement Act ("CAAA"), Public Law 104–121." Parra v. Astrue, 481 F.3d 742, 746–47 (9th Cir. 2007). "As we have previously explained, the purpose of the CAAA was 'to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy.' " Id. at 747 (quoting Ball v. Massanari, 254 F.3d 817, 824 (9th Cir. 2001). Under SSA regulations, the ALJ must conduct a drug abuse and alcoholism analysis to determine which of the claimant's disabling limitations would remain if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." Parra, 481 F.3d at 747 (citing 20 C.F.R § 404.1535(b)). "[T]he claimant bears the burden of proving that drug or alcohol addiction is not a

---

[2] Although Cothrell uses "DAA" as an acronym for "drug and alcohol abuse," SSR 13-2p uses "DAA" as an acronym for "drug addiction and alcoholism." Although conceptual similar, the Court adheres to the SSA's definition when using the "DAA" acronym in this Opinion & Order.

contributing factor material to his disability." Id. at 748. Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007).

As explained above, the ALJ found Cothrell's substance abuse was material to the analysis. Tr. 603–06. As required by 20 C.F.R. § 404.535, the ALJ separately analyzed whether Cothrell's impairments prior to the December 17, 2009 would be disabling absent the effects of his substance abuse. Tr. 603–10. The ALJ found that, considering Cothrell's mental limitations and excluding the effects of substance abuse, Cothrell could still perform jobs such as janitor or assembler. Tr. 609. With the effects of substance abuse, however, Cothrell could not maintain competitive employment. Tr. 610. Therefore, the ALJ found that drug and alcohol abuse was material to Cothrell's disability prior to December 17, 2009.[3]

Substantial evidence supports the ALJ's conclusion and therefore the Court finds no error. There is no dispute that Cothrell has a long history of substance abuse; he admits to using alcohol and marijuana and regularly since his teenage years. Tr. 558–59, 581. He entered a two-month long in-patient drug rehabilitation program at age 21. Tr. 162. Cothrell admitted to using methamphetamine from approximately 2000 until a month or two before his hospitalization in December of 2009. Tr. 559–60. He reported that at times, he used meth "daily," though he claims he did not start using meth until after he was fired from the family business in 2000. Tr. 225. Cothrell admitted to using cocaine in the 1980s. Tr. 225. Dr. Moore described how Cothrell's reporting of drug use was often vague and inconsistent, Tr. 591, and providers have noted that Cothrell may "minimiz[e]" the extent of his drug use when asked. Tr. 179.

---

[3] As explained above, Cothrell was psychiatrically hospitalized between December 11, 2009, and January 1, 2010. The ALJ found that after December 17, 2009, the severity of Cothrell's mental impairments medical equaled the criteria of listings 12.04, 12.06, and 12.08, and that drug and alcohol abuse was no longer material. Therefore, the ALJ concluded that Cothrell was disabled after December 17, 2009. Tr. 610–13.

The portion of SSR 13-2p that Cothrell repeatedly cites does not change this result. Pl. Brief at 6 (quoting SSR 13-2p, Question 7(b)). The Commissioner issued Social Security Ruling 13-2p in February of 2013, to "explain [the Agency's] policies for how [it] consider[s] whether 'drug addiction and alcoholism' (DAA) is material to our determination of disability in disability claims and continuing disability reviews." <u>Soc. Sec. Ruling SSR 13-2p; Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism</u>, (S.S.A. Feb. 20, 2013), available at 2013 WL 621536. The Ruling explains that "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find a claimant disabled if he or she stopped using drugs or alcohol." <u>Id.</u> Question 7(b) states as follows:

> To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA.

SSR 13-2p, Question 7(b)). Cothrell relies on this question to argue that the ALJ erred because he "did not identify any evidence in the record showing what the effects of [Cothrell's] drug and alcohol use were during the relevant period." Pl. Brief at 6.

First, to the extent that this question seems to conflict with the clear holding of <u>Parra</u> that the claimant bears the burden of proof in the materiality analysis, the Court is bound to follow the controlling Ninth Circuit precedent. Thus, it was Cothrell's burden, not the Commissioner's, to produce evidence showing that his drug abuse was not a contributing factor material to his disability. <u>Parra v. Astrue</u>, 481 F.3d 742, 750 (9th Cir. 2007).

Second, the ALJ's decision complies with Question 7(b) because it discusses evidence that shows Cothrell "would not be disabled in the absence of DAA." SSR 13-2p, Question 7(b). The ALJ relied on testimony from Dr. Moore, who examined Cothrell's medical records both

prior and subsequent to December 17, 2009. Tr. 604. Dr. Moore testified that Cothrell's mental impairments waxed and waned in severity, that prior to December of 2009, the limited "available evidence [did] not indicate more than a mild limitation in activities of daily living," and that what limited evidence there was of Cothrell's social activities did not indicate more than moderate limitations. Tr. 604. "As for concentration, persistence, and pace," the ALJ wrote," Dr. Moore saw "nothing in the records to raise a flag to make it more than mild; and there were no episodes of decompensation during [the pre-December 2009] time frame." Tr. 604. This discussion is sufficient to meet the requirements of the section of SSR 13-2p that Cothrell cites.

Cothrell also claims that SSR 13-2p "directs the fact finder to order a consultative exam to determine the effects of DAA, if the record does not contain the needed evidence," and then asserts that the ALJ erred by not ordering such an exam in his case. Pl. Brief at 7. First, as explained above, the record does contain the needed evidence to determine the effects of DAA on Cothrell's ability to work, and therefore the rule does not apply. Second, the ALJ did not have a duty to further develop the record regarding the materiality of Cothrell's drug abuse through 2009. An "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011). Given the significant gap in time and the changes in Cothrell's condition since the relevant time, any further exam would rely solely on Cothrell's existing medical records and his own testimony. That evidence is already in this record. Non-examining medical expert Dr. Moore reviewed Cothrell's records and testimony and concluded that his limitations before December of 2009 were only mild or moderate absent the effects of drugs and alcohol. Tr. 576–87, 603. The ALJ did not err by failing to order a further consultative examination.

2. Dr. Causeya

Next, Cothrell argues that the ALJ improperly rejected the opinion of examining psychologist Dr. Karla Causeya. Pl. Brief at 7. There are three sources of medical opinion evidence in Social Security cases: treating physicians, examining physicians, and non-examining physicians. Valentine, 574 F.3d at 692 (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. The ALJ can reject the uncontroverted opinion of a treating or examining physician only for "clear and convincing reasons" supported with substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if a treating or examining doctor's opinion is contradicted by another doctor, the ALJ can reject it only by providing "specific and legitimate reasons" that are supported by substantial evidence. Id.

Dr. Causeya examined Cothrell in April of 2011. Tr. 521. She diagnosed Cothrell with severe and recurrent major depressive disorder, social phobia, post-traumatic stress disorder, and avoidant personality disorder. Tr. 529. Dr. Causeya described Cothrell's early childhood and Cothrell's early success working for the family manufacturing business. Tr. 521. She wrote about the growing conflicts between Cothrell and his father about how to run the business. Tr. 521–22. Eventually, those conflicts bubbled over, and Cothrell was fired from the business in 2000. Tr. 522. Cothrell then sued his father; the parties settled out of court for $300,000. Tr. 522. Cothrell apparently lived on that money and his retirement fund until the money ran out around 2006. Tr. 522. Dr. Causeya wrote that Cothrell's mental health "deteriorated rapidly" following his

dismissal from the business. Tr. 522. He withdrew from his family, and apparently his physical appearance and mental abilities deteriorated as well. Tr. 522.

Around 2003, Cothrell met "some unsavory characters" whom he invited to live on his property. Tr. 523. The couple "was reportedly using meth," and Cothrell had many confrontations with them, including some involving drawn guns, and several police encounters. Tr. 523. From 2000 to 2006 Cothrell was unemployed, but he reported to Dr. Causeya that from 2006 to 2008 he worked transporting mobile homes. Tr. 523. Dr. Causeya then described Cothrell's other mental impairments, and noted that he was psychiatrically hospitalized in 2009. Dr. Causeya briefly mentioned Cothrell's struggles with drugs and alcohol:

> Mr. Cothrell reports a history of alcohol and marijuana use starting in high school. He reports there was a ten year period in which he didn't use any substances. He began using again in 1997, although he has not seen his substance use as a problem for him. He has also used cocaine and methamphetamine at times. He reports no history of IV drug use. He reports he has not used alcohol or drugs since his hospitalization ending in January 2010. His therapist . . . meets weekly with [Cothrell] and has never perceived him as under the influence of substances. He does not believe that Eris is using alcohol or drugs.

Tr. 524–25.

Dr. Causeya also completed a Mental Residual Functional Capacity evaluation form for Cothrell in April of 2011. The form includes twenty different mental abilities and asks the medical provider to rate the patient as "Slight/None," "Moderate," "Moderately Severe," or "Severe." Tr. 531.  Dr. Causeya rated Cothrell as having no limitations in any of three areas of "Understanding & Memory." Tr. 531. She rated Cothrell as "Moderately Severe" in nine areas, and "Severe" in six others. Tr. 532–33. She concluded by indicating that Cothrell's symptoms would be aggravated by workplace stressors. Tr. 533. Interestingly, Dr. Causeya did not complete a section that asked: "The above-described conditions have existed to this degree of

severity since at least _____.” Tr. 533. However, in her written report, Dr. Causeya wrote that "given his mental illness, [Cothrell] was not able to be gainfully employed, outside his father's business, from at least 2000, and very likely, years before that." Tr. 530.

Dr. Causeya's opinion that Cothrell suffered from disabling mental limitations as far back as at least 2000 is contradicted by medical consultant Dr. Moore's testimony that Cothrell's limitations were no more than moderate during that time. Tr. 604. Accordingly, the ALJ's analysis of Dr. Causeya's opinion is subject to the lower, "specific and legitimate" standard. Orn, 495 F.3d at 632.

The ALJ briefly addressed Dr. Causeya's report "as it relates to the timing of [Cothrell's] mental deterioration . . . ." Tr. 612. "There are too many obvious factors," the ALJ concluded, "that objectively argue against [Dr. Causey's] poorly supported opinion." Tr. 612. First, the ALJ noted that Dr. Causeya saw Cothrell in mid-2011 and largely relied on reports from his mother and sister about his condition over time. Tr. 612. As explained more fully below, the ALJ discounted those lay opinions because they did not address Cothrell's admitted drug use, including "daily" methamphetamine use, during the period in question. Tr. 612. The ALJ noted that "there also is a lack of treatment notes and evaluations that are even close to the time specified by [Dr. Causeya]." Tr. 612. "Further," the ALJ continued, "[Cothrell] demonstrated the capacity to engage in work or work like activities long after" the dates discussed by Dr. Causeya. Tr. 612. Finally, the ALJ noted that Dr. Causeya did not meaningfully "discuss the impact of drug and alcohol abuse, despite being aware that it is a factor." Tr. 612. All of these reasons are specific, legitimate, and supported by evidence in the record. See Valentine, 574 F.3d at 694 (ALJ can properly discount evidence that relies on rejected lay witness testimony); Loyd v. Colvin, No. 3:13-CV-00753-MC, 2014 WL 3579468, at *3 (D. Or. July 21, 2014) (plaintiff's

ability to work after alleged disabling injury was sufficient reason for rejecting doctor's opinion); Alzayadie v. Astrue, No. 09-CV-1886-JLS JMA, 2010 WL 3169592, at *14 (S.D. Cal. July 26, 2010) (lack of relevant treatment notes was a specific and legitimate reason for discounting doctor's opinion). Thus the ALJ did not err in rejecting Dr. Causeya's opinion.

    3.   Lay Testimony

      Cothrell argues that the ALJ erred by improperly rejecting lay testimony from his mother and sister. Pl. Brief at 3. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted). The ALJ cannot disregard competent lay witness testimony without comment, but the ALJ need only give "reasons that are germane to each witness" to discount lay testimony. Id. (citations omitted).

      Cothrell's mother and sister each submitted written letters and testified at the hearing in support of Cothrell's application for benefits. Both of the witnesses' written statements describe Cothrell as successfully navigating his job at the family business—his mother stated he was "doing an exceptional job"—until he suddenly withdrew from his family and job, began lashing out in rant-filled tirades, and became crippled by paranoid anxiety. Tr. 113–14; 116. He began hanging out with "losers and users" and was fired from the family business, losing "the most important thing in his life, the promise that someday the business would be his." Tr. 114. He "disassociated with all family but an occasional manic episode," and retreated to a "hovel" of a trailer with a leaking roof and no running water or electricity, which he filled with "clutter," "dirty clothes and garbage," and "an obsessive amount of tools and hardware" scattered both inside and out. Tr. 114–115; 117.  The written testimony from Cothrell's sister makes no mention of his history of drug and alcohol abuse, instead attributing all of his difficulties to

mental illness. See Tr. 116–17. Cothrell's mother made a passing reference to recent "comprehensive drug therapy" that had helped Cothrell "marginally control" his mental issues, and that he received inpatient treatment for drug and alcohol abuse in his early twenties. Tr. 113. But she too ascribed all of Cothrell's problems to anxiety and mental health issues. Tr. 113–15. At the hearing, the ALJ inquired of each witness whether they had any knowledge of Cothrell's methamphetamine use. His mother said she had some suspicions of drug use around 1998 and 2000, but could not be sure. Tr. 569–70. His sister denied any "direct knowledge" that Cothrell used drugs. Tr. 574.

Although the ALJ found their testimony was "generally consistent with the totality of the evidence," the ALJ discounted their testimony because neither witness addressed Cothrell's history of drug and alcohol abuse. Tr. 612. Given the ALJ's well-supported conclusion that drugs and alcohol abuse were material to Cothrell's disability prior to his psychiatric hospitalization in December of 2009, the ALJ's reason for discounting this lay witness testimony is a germane one supported by substantial evidence. Neither lay witnesses' testimony was helpful to the ALJ's analysis of the materiality of Cothrell's drug abuse, and thus the Court finds no error.

4. Substantial Evidence

Finally, Cothrell argues generally that the ALJ's decision is not supported by substantial evidence. Pl. Brief at 10. Cothrell then repeats his arguments about the ALJ's analysis of the materiality of his drug and alcohol abuse, and the ALJ's rejection of Dr. Causeya's opinion and the lay testimony from Cothrell's mother and sister. Pl. Brief at 10. As explained above, the ALJ did not err in reaching any of these conclusions.

Cothrell also briefly mentions that the ALJ "discussed office visits where [Cothrell] was doing well, but he ignored the visits where [Cothrell] was crying and visibly anxious." Pl. Brief

at 10. However, Dr. Moore directly addressed the swings in Cothrell's presentation to doctors and testified that such a pattern is common in patients as they start treatment for substance abuse. Tr. 586–87. The ALJ discussed Dr. Moore's testimony, including her explanation of Cothrell's waxing and waning symptoms, and gave her opinion significant weight. Tr. 603–04. Accordingly, the Court finds no error.

<strong>CONCLUSION</strong>

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this ____15____ day of _____June_____, 2016.

_____
MARCO A. HERNANDEZ
United States District Judge